O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA TOROUSSIAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ASSET ACCEPTANCE, LLC, a Delaware Limited Liability Company; MIDLAND CREDIT MANAGEMENT INC., a Kansas corporation,<br><br>　　　　Defendants. | Case No. CV 12-03519 DDP (AGRx)<br><br>**ORDER GRANTING DEFENDANT MIDLAND CREDIT MANAGEMENT INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Dkt. No 43] |

Presently before the court is Defendant Midland Credit Management Inc. ("Midland")'s Motion for Summary Judgment. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following order.[1]

**I.　Background**

On September 11, 2008, someone opened an HSBC credit card in Plaintiff's name. (Declaration of Rachelle Boire In Support of

---

[1] While the court has considered Plaintiff's opposition to the motion, the court notes that Plaintiff violated <u>both</u> the local rules of this district and the standing order of this court by failing to timely file an opposition, filing an overlong brief, and failing to provide mandatory chambers copies of any paper.

1  Motion, Ex. D.)  The applicant used Plaintiff's name, social
2  security number, address, and driver license information to open
3  the account.  Id.
4     Approximately two years later, on November 10, 2010, Plaintiff
5  filed an identity theft victim report with the Los Angeles Police
6  Department.  (Declaration of Diana Toroussian in Opposition ¶ 4.)
7  Plaintiff's report was motivated by her discovery of fraudulent
8  accounts, including the HSBC account, on her credit report.  (Id.
9  ¶¶ 4-5.)  According to Plaintiff's declaration, she neither applied
10 for the HSBC account nor received any statements or information
11 regarding the account.  (Id. ¶ 5.)
12    On January 20, 2011, Plaintiff filed an identity theft
13 victim's complaint with the Federal Trade Commission and filled out
14 a notarized affidavit of fraud.  (Id. ¶¶ 7-8.)  Plaintiff sent the
15 fraud report to the three credit reporting agencies.  (Id. ¶ 9.)
16 By March 2011, the credit bureaus had deleted the HSBC account from
17 Plaintiff's credit report.  (Id. ¶10.)
18    On June 8, 2011, Defendant Midland acquired the HSBC account.
19 (Boire Decl. ¶ 4.)  On June 15, Midland sent Plaintiff a letter
20 identifying Midland as "a debt collection company" and the servicer
21 of "your HSBC Bank Nevada, N.A. account," and offering to settle
22 the outstanding balance.  (Id., Ex. E).
23    On July 15, 2011, Plaintiff sent Midland a letter requesting
24 that Midland investigate and provide proof of the validity of the
25 HSBC debt.  (Boire Decl., Ex. F; Toroussian Decl. ¶ 14.)  The
26 letter did not mention that Plaintiff was a victim of identity
27 theft.  On August 11, Midland sent another letter to Plaintiff
28 listing payment options.  (Boire Decl., Ex. G.)

2

On October 11, an entity called Renatus Credit ("Renatus") sent Midland a letter on behalf of Plaintiff.[2] (Id., Ex. H.) The Renatus letter, like Plaintiff's first letter, asked Midland to verify the debt. (Id.) The letter also stated that Plaintiff had disputed the account with the credit bureaus, who had verified the account. (Id.) The letter further accused Midland of inaccurate credit reporting. (Id.) Like Plaintiff's first letter, the October 11 letter did not mention that Plaintiff was a victim of identity theft.

On October 21, Midland notified Plaintiff that it had opened an investigation. (Declaration of Vahag Matevosian in Opposition, Ex. L.) The letter reiterated that Midland was a debt collector attempting to collect a debt. (Id.)

On November 5, Renatus sent Midland a second letter. (Boire Decl., Ex. I). The letter reiterated that Midland was reporting an invalid debt to the credit agencies. (Id.) The letter did not mention that Plaintiff was a victim of identity theft.

On November 10, Midland sent Plaintiff another response. (Boire Decl., Ex. J.) Midland stated that Plaintiff had not provided sufficient information for it to investigate her dispute. (Id.) Midland stated that it would report the account to the credit bureaus as "Disputed," and requested that Plaintiff provide an explanation of the nature of her dispute, as well as supporting documentation, including, in the case of alleged fraud or identity

---

[2] While the Renatus letter states that it is a follow-up to a Renatus letter of July 20, there is no evidence in the record of such a letter.

theft, a policy report, FTC fraud report, and fraud affidavit. (Id.)

Plaintiff claims that on December 13, 2011, she sent a letter to Midland stating that she was a victim of identity theft. (Toroussian Decl. ¶ 21; Ex. I.) The letter did not include any supporting documents. In any event, Midland claims it never received Plaintiff's letter. (Boire Decl. ¶ 22.)

Plaintiff sent a certified letter regarding the fraudulent nature of the HSBC account to Midland on February 24, 2012. (Toroussian Decl. ¶ 22.) The letter referred to a "fraudulent account and debt" and "previous correspondences," but did not mention identity theft or include any documentation. (Matevosian Decl., Ex. L.)

Plaintiff's First Amended Complaint alleges eight causes of action against Midland for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(e) et seq., California Civil Code § 1798.93, California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785.25(a), California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.17, and libel. Midland now moves for summary judgment on all claims.

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the

court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their

5

support clearly. <u>Carmen v. San Francisco Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." <u>Id.</u>

**III. Discussion**

    A.  California Civil Code § 1798.93

A victim of identity theft may bring an action against a claimant with respect to the claimant's attempt to recover on an alleged debt. Cal. Civil Code § 1798.93(a). A plaintiff who proves that she is a victim of identity theft by a preponderance of the evidence may recover actual damages, attorney's fees, costs, and equitable relief. Cal. Civil Code § 1798.93(c)(5). To so recover, a plaintiff must show that "she provided written notice to the claimant that a situation of identity theft might exist, including, upon written request of the claimant, a valid copy of the police report . . . at least 30 days prior to . . . her filing of the action." <u>Id.</u> (emphasis added).

Plaintiff argues that she sent Midland "at least two notices" of identity theft. Plaintiff's contention is not supported by the record.[3] There is no dispute that four of the five letters Plaintiff sent to Midland made no mention of identity theft. Indeed, the first three letters, dated July 15, October 11, and November 5, merely challenged Midland to validate the debt, without so much as a mention of fraud. The February 24, 2012 letter

---

[3] Plaintiff also concedes that the first three letters were insufficient by arguing that Midland's November 10 letter "predates Plaintiff's notice of fraud." (Opp. at 12)

6

mentioned a "fraudulent account and debt," but did not mention identity theft. Of the five letters, only the December 13, 2011 letter, which Midland claims it never received, stated that Plaintiff was a victim of identity theft.

Regardless whether Midland received the December 13 letter, and even assuming that the February 24 letter's reference to a "fraudulent account" constituted notice to Midland that identity theft might exist, neither letter satisfied the requirement that Plaintiff provide, "upon written request of the claimant, a valid copy of the police report." Cal. Civil Code § 1793(c)(5). As early as November 11, well before Plaintiff even arguably notified Midland of the possibility of identity theft, Midland asked Plaintiff to explain the nature of her dispute. Midland's letter explicitly stated that it needed supporting documentation, such as, in the case of "Fraud or Identity Theft: a) a copy of a police report; b) Federal Trade Commission Fraud Affidavit that has been filled out . . .; or (c) notarized fraud affidavit." (Boire Decl. Ex. J.) There is no evidence in the record that Plaintiff submitted any supporting documentation at any point.[4]

---

[4] Plaintiff appears to argue that she need not have submitted any documentation because she did not give notice of identity theft or fraud until <u>after</u> Midland requested supporting documentation. (Opp. at 12.) This argument has no merit. While in most cases, a written request for a police report regarding identity theft might not occur until there has been some suggestion that identity theft is at issue, the statute does not specify any such sequence. Furthermore, Midland's early request for documentation was necessitated by Plaintiff's repeated, vague, and admittedly insufficient notices. Indeed, had Midland not prompted Plaintiff for a more specific explanation with the request Plaintiff now seeks to ignore, her claim for relief under Section. 1793(c)(5) would likely have been even less colorable than that presented here.

7

    Plaintiff appears to suggest that even if she is not entitled to actual damages, she can recover a civil penalty of $30,000 under 1793(c)(6). Section 1793(c)(6) provides for such a penalty, "in addition to any other damages," if a victim of identity theft establishes that (1) she provided written notice to the claimant that identity theft might exist, "and explaining the basis for that belief," (2) "the claimant failed to diligently investigate . . . ," and (3) the claimant continued to pursue its claim despite facts entitling the identity theft victim to relief from the claim. 1793(c)(6).

    As an initial matter, though neither party has briefed the issue, Plaintiff's contention ignores that a civil penalty under Section 1793(c)(6) is available "in addition to" the remedies of Section 1793(c)(5). As discussed above, however, Plaintiff is not entitled to any remedies under Section 1793(c)(5). Having failed to meet the more permissive requirements of that section, Plaintiff cannot possibly satisfy the stricter requirements and obtain the greater relief of Section 1793(c)(6).

    Furthermore, even if Plaintiff could recover a civil penalty without making an adequate claim for actual costs, she has not made the requisite showing. Section 1793(c)(6)(A) requires a plaintiff to explain the basis for her belief that she is a victim of identity theft. As discussed above, Plaintiff never mentioned that she was such a victim in four of her five letters. Even the December 13 letter, which alone stated that Plaintiff was an "identity theft victim," provided no basis for its assertions.

    Nor has Plaintiff provided any evidence that Midland failed to conduct a diligent investigation. <u>See</u> Cal. Civ. Code §

8

1793(c)(6)(B). Midland's November 11 letter makes clear that it needed additional information from Plaintiff to further its investigation. Plaintiff never provided that information. Though Plaintiff points to Midland's response to an interrogatory as an admission that Midland conducted no investigation, the cited evidence merely reiterates that "Plaintiff['s] failure to provide [Midland] with her identity theft report has frustrated [Midland's] attempt to investigate her claim of identity theft." (Matevosian Decl., Ex. N)

Absent any evidence that Plaintiff satisfied the requirements of California Civil Code Section 1793(c)(5) and c(6), Midland is entitled to summary judgment on Plaintiff's first cause of action.[5]

**B. Fair Credit Reporting Act ("FCRA")**

The FCRA imposes certain duties on sources that provide credit information to credit reporting agencies ("CRAs"). Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009); 15 U.S.C. § 1681s-2. Midland is such a source. A further set of duties is triggered when reporting sources such as Midland receive notice from a credit reporting agency or bureau that a consumer disputes certain credit information. Gorman, 584 F.3d at 1154; 15 U.S.C. § 1681s-2(b). These duties are not triggered, however, if a source receives notice of a dispute from the consumer himself. Gorman, 584 F.3d at 1154.

Plaintiff claims that Midland violates the duties imposed by

---

[5] This conclusion does not affect Plaintiff's claims for declaratory and injunctive relief under California Civil Code Section 1793.98(c)(1),(2), and (3).

15 U.S.C. § 1681s-2(b). Specifically, Plaintiff alleges that Midland failed to conduct an investigation with respect to the disputed information that the CRAs provided to Midland and failed to delete inaccurate information. See 15 U.S.C. § 1681s-2(b).

Midland has introduced evidence that the credit reporting agencies never notified Midland of any dispute regarding the HSBC account. (Boire Decl. ¶ 26.) Plaintiff argues that Midland's November 10 letter is evidence that Midland did receive notice from the CRAs because the letter requests information regarding Plaintiff's "dispute of the credit reporting of your . . . account pursuant to the Fair Credit Reporting Act." (Boire Decl., Ex. J; Opp. at 16.) Plaintiff's argument has no merit. Midland's reference to the FCRA cannot possibly be read to suggest that it received anything from any CRA. Rather, Midland's statement identifying the dispute was responsive to Plaintiff's November 5 letter, which alleged that Midland was reporting an unverified debt to the CRAs and that "FCRA Section 1681s-2(b) triggers your furnisher's liability under this section, since [Plaintiff] has made her initial disputes with the credit bureaus prior to . . . submission of her disputes directly to you." (Boire Decl., Ex. I.) That Plaintiff submitted a dispute to the CRAs and to Midland directly, however, has no bearing on whether the CRAs reported anything to Midland. See Gorman, 584 F.3d at 1154.

Beyond Midland's letter, Plaintiff cites only to her own declaration, which states that "CRAs did not inform me that they find my dispute to be frivolous or that they would not be forwarding it to Defendant. As such, CRAs communicated my dispute to Defendant." (Toroussian Decl. ¶ 16.) In other words, Plaintiff

argues that Midland must have received notice from the CRAs because the CRAs did not tell Plaintiff that they were <u>not</u> going to send Midland any notice. However, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2009). Plaintiff's unsupported assertion is, therefore, inadequate to defeat Midland's motion with respect to her FCRA claims.[6]

C. California Consumer Credit Reporting Agencies Act

The relevant part of the CCCRAA states that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). Plaintiff argues that her letters to Midland put Midland on notice that the information regarding the HSBC account was inaccurate because of the "fraudulent nature" of the account. (Opp. at 21-22.)

As discussed above, however, Plaintiff's letters were extremely vague. Even taken at face value, Plaintiff's first three letters did no more than inform Midland that Plaintiff disputed the HSBC account for some unknown reason. While the fifth, and particularly the fourth, letter might have put Midland on notice that Plaintiff claimed to be a victim of identity theft, those letters alone did not establish that Plaintiff was actually a

---

[6] The reasonableness of a credit information furnisher's investigation of a dispute necessarily depends on the information provided by the CRA. <u>Gorman</u>, 584 F.3d at 1157. Absent any evidence that Midland received any information from a CRA, a reasonableness inquiry, which may be appropriate on summary judgment, is unnecessary. <u>See id.</u>

11

victim. Midland requested, but never received, any documentation supporting any of Plaintiff's claims, nor, as discussed above, is there any evidence that a CRA reported a dispute to Midland.[7] On such a record, no trier of fact could find that Midland should have known that Plaintiff was a victim of identity theft.

D. FDCPA and Rosenthal FDCPA[8]

The FDCPA is designed to curtail abusive practices by debt collectors. 15 U.S.C. § 1692(e). A "debt collector" under the FDCPA is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Midland argues that it does not qualify as a "debt collector" because there is no evidence that its primary purpose is collecting on debts owed to another, as opposed to collecting on debts Midland itself owns. The court disagrees. Midland's June 15 letter identified itself as "a communication from a debt collector" and described Midland as "a debt collection company." (Boire Decl., Ex. E.) Midland's August 11 letter used similar language. (Id., Ex. G). The July 11 letter, in which Midland requested documents from Plaintiff, stated, "[T]his communication is from a debt collector. This is an attempt to collect a debt." (Id., Ex. J.)

---

[7] As the Ninth Circuit explained in Gorman, the requirements of § 1785.25 and Section 1681s-2(a) of the FCRA are "nearly identical." Gorman, 584 F.3d at 1172. Plaintiff has not, however, brought an FCRA claim under Section 1681s-2(a).

[8] California's Rosenthal FDCPA generally incorporates the provisions of the federal FDCPA. Cal. Civ. Code § 1788.17.

12

This evidence is more than sufficient to create a triable issue as to whether Midland's primary purpose is to collect on debts owed to third parties, and thus qualifies as a debt collector under the FDCPA. The Rosenthal FDCPA does not limit its definition of debt collector to those who collect on behalf of others, but does limit the term to those who engage in debt collection "in the ordinary case of business." Cal. Civ. Code § 1788.2(c). Midland's letters thus create a triable issue with respect to the Rosenthal FDCPA as well.

Midland also argues that Plaintiff has failed to put forth any evidence that Midland attempted to collect on a "debt," as defined by the FDCPA. Under the FDCPA, a debt is an obligation "of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction <u>are primarily for personal, family, or household purposes</u> . . . ." 15 U.S.C. § 1692a(5) (emphasis added). Midland argues that, even if the HSBC account was fraudulently opened, there is no evidence that the charges arising thereunder resulted from consumer purchases made for personal, family, or household purposes.

Neither party sufficiently addresses this question, which is a close one. The Fourth Circuit has recognized, albeit in an unpublished disposition explicitly declining to address the issue, that FDCPA plaintiffs who are victims of identity theft, or who have other worthy collection defenses, may find it impossible to document the nature of the debt incurred. <u>Booshada v. Providence Dane LLC</u>, 462 Fed. Appx. 331, 336 (4th Cir. 2012). The court agreed, however, with a court of this circuit that "the

determination of whether a debt is a consumer debt is a fact driven one, and should be decided on a case-by-case basis looking at all relevant factors." Id., citing Hansen v. Ticket Track, Inc., 280 F. Supp. 2d 1196, 1204 (W.D. Wash. 2003) (alterations omitted).

Looking then, to the specific facts of this case, and even taking into account the strong consumer protection policy underlying the FDCPA, the court agrees that Plaintiff has not put forth sufficient evidence that consumer debt is at issue. The only evidence Plaintiff cites in support of her contention is that the credit card linked to the disputed HSBC account was opened at a retail bridal shop. (Opp. At 2; Boire Decl., Ex. D.) In some cases, information about the nature of fraudulently incurred charges may be unavailable or ambiguous.[9] In such cases, the origin of the debt may be sufficient to create a triable issue as to its nature. Here, however, Plaintiff has not even attempted to identify the fraudulent charges made in her name, let alone demonstrate that they may have been incurred for personal, family, or household purposes. Thus, the record before the court in this

---

[9] At least one court has found, in an identity theft case, that an FDCPA plaintiff failed to create an issue of fact with respect to the nature of alleged debts. In Anderson v. AFNI, Inc., an identity theft victim brought an FDCPA claim based upon fraudulent Verizon (presumably telephone) accounts. Anderson v. AFNI, Inc., No. 10-4064, 2011 WL 1808779 at *1 (E.D. Pa. May 11, 2011). The plaintiff argued that because (1) the identity thief was a known, convicted individual, (2) the debts were associated with a residential address, and (3) the debt collector treated the debts as "debts" under the FDCPA, she had created a triable issue of fact. Anderson, 2011 WL 1808779 at *14. The court disagreed, reasoning that individuals sometimes conduct commercial activities from residential addresses. Id. This court further notes that the Verizon accounts and (presumably) telephone charges at issue in Anderson would, by their very nature, likely be more difficult to classify than discrete fraudulent purchases of the type made on the HSBC credit card here.

14

case does not include sufficient evidence of a "debt" as defined by the FDCPA to create a triable issue of fact. Midland is therefore entitled to summary judgment on the FDCPA and RFDCPA claims.

      E.   Libel

Under California law, libel "is a false and unprivileged publication . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. The FCRA, however, preempts all libel claims except with respect to consumer information "furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). A plaintiff must, therefore, show that a defendant furnished credit information with knowledge of falsity or reckless disregard for the truth. Gorman, 584 F.3d at 1168 (citing New York Times v. Sullivan, 376 U.S. 254 (1964).

Here, Plaintiff argues that Midland was admittedly reckless because it stated, in response for a request for admission, that it lacked sufficient information to admit or deny that the HSBC account is fraudulent. (Opp. at 27.) As discussed at length above, Midland attempted to investigate Plaintiff's dispute. Even once Plaintiff clarified that a "fraudulent account" was at issue, and even assuming that Midland received the fourth letter referencing "identity theft," Plaintiff never provided Midland with the documentation it needed, and requested, to carry out a full investigation. Though Midland opened an investigation, Plaintiff's own failures impeded Midland's inquiry. Under such circumstances, no rational trier of fact could conclude that Midland was reckless, let alone intentional, in its reporting of the HSBC account.

**IV. Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED, with one exception. The court does not reach Plaintiff's remaining claim for declaratory and injunctive relief under California Civil Code Section 1798.93(c). The court declines to exercise supplemental jurisdiction over that lone remaining state law claim. See 28 U.S.C. § 1367(c).

IT IS SO ORDERED.

Dated: October 4, 2013

DEAN D. PREGERSON
United States District Judge